**EL PASO COUNTY v. ELAM.**
No. 3543.

Court of Civil Appeals of Texas. El Paso.
May 20, 1937.

394

D. E. Mulcahy, Co. Atty., and Harold L. Sims, Asst. Co. Atty., both of El Paso, for appellant.

Jones, Hardie, Grambling & Howell, of El Paso, for appellee.

WALTHALL, Justice:

We adopt the statement contained in appellant's brief, as does appellee, as to the nature and result of this suit.

J. H. Elam brought this suit against the County of El Paso, in which he claimed that the county had damaged his land by diverting surface water from its natural channel upon his land. The facts pleaded and shown by the evidence are substantially as follows:

Plaintiff Elam, at the times mentioned, was the owner of 96 acres of land near the town of Fabens, in El Paso County. In the summer of 1930, the county caused to be constructed what is known and designated as the Fabens Dyke Road, or Fabens Storm Drain, a ditch or drain about one and one-quarter miles in length, about thirty feet wide at the bottom and about forty feet wide at the top, and about six feet deep. The ditch or dyke was a drainage ditch and built for the purpose of maintaining, protecting, and draining public roads in El Paso County, Tex., in the vicinity of the town of Fabens. The ditch was constructed for public purposes, without Elam's consent and without any consideration paid to Elam. The course of the ditch was from the San Felipe Draw or San Felipe Arroyo, south and west to the river Rio Grande. The construction of the ditch changed the natural flow or channel of water in flood times by diverting it from San Felipe Arroyo, and in its course traversing and passing under the North Loop road, the railroad, and state highway at about right angles. The construction of the ditch or dyke was not in connection with a public road, but, as found by the jury, was constructed to protect the public roads from overflow, in the vicinity of Fabens, and did in fact protect such public roads from overflow.

From August 30, 1935, to September 5, 1935, Elam's lands were overflowed, and the jury found that his "river bed land" was damaged in its market value as a prox-imate result of the construction of said Fabens Dyke and Road in the sum of $1,-625; that his high land was damaged in its market value as a proximate result of the construction of the ditch, at the time complained of, in the sum of $1,625.

The jury found that Elam sustained damage to the growing crops on said land in the sum of $901.

The jury found that the flood which overflowed Elam's land was not the result of an extraordinary and unusual rain which could not have been foreseen by the exercise of ordinary care, and was not the result of a new and independent cause.

The trial court entered judgment in favor of Elam and against the county in the sum of $4,151, as found by the jury. The court overruled the county's motion for a new trial, and the county appeals.

Opinion.

We will designate the parties as plaintiff and defendant as in the trial court.

Under its assignments of error the county defendant presents many propositions, the first three of which may be considered together.

Defendant submits that the county, having no general police power, can exercise only such functions as have been granted to it either expressly or by necessary implication by the Constitution or statute, and cannot be held liable for taking or damaging plaintiff's property for public use; the undisputed evidence being that the "Fabens Dyke Road" was not a public road, but essentially a flood control project and beyond the power of the county to construct, and there being no liability for the unauthorized acts of the county's officers and agents, and no petition having been filed with the county clerk or with the commissioners' court, the said court was without jurisdiction to construct said ditch, and the trial court should have instructed the verdict in favor of the defendant county.

Article 5, § 18, of the Constitution of the State gives the commissioners' court the right to "exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."

Article 16, § 59a, provides that the "reclamation and drainage of its over-flowed lands, and other lands needing drainage," are declared public rights and duties, and

that the Legislature shall pass all such laws as may be appropriate thereto.

Under the head of "Powers and Duties," subdivision 6 of article 2351, R.C.S., enumerating the powers and duties of the commissioners' court, enumerated are: "Exercise general control over all roads, highways, ferries and bridges in their counties."

The commissioners' court having by express legislation the general control over the matters above enumerated, in El Paso county, and the Constitution having conferred upon that court the right to exercise such powers and jurisdiction over all county business and such as may be conferred upon that court by the laws of the state, and such powers, jurisdiction, and general control over the business affairs of the county not having been given to any other court, the question presented is: Did the commissioners' court, by necessary implication, if not by direct grant, have the right to construct the drainage ditch, and for the purpose for which it was constructed? We have concluded that the commissioners' court had such right, power, and jurisdiction.

■ The provisions of the Constitution and the general laws of the state in conferring upon the commissioners' court, exclusively, the general control over the business affairs of the county, as said by Judge Jenkins, of the Austin Court of Civil Appeals, in Von Rosenberg v. Lovett, 173 S.W. 508, appeals to us with peculiar force when dealing with the implied powers of commissioners' courts. As said by the Supreme Court in Commissioners' Court of Madison County v. Wallace et al., 118 Tex. 279, 15 S.W.(2d) 535, the commissioners' court is a creature of the Constitution, and its powers are limited by the Constitution and the laws passed by the Legislature, and must have authority of law for the contract, and when the authority is given, a reasonable construction of it will be given to effect its purpose. The matter of constructing drainage ditches in the county is, unquestionably, county business, and the commissioners' court is the only active governing body of the county, with a jurisdiction conferred upon it by law to do that work, and should be given a broad and liberal construction so as not to defeat the purpose of the law. The commissioners' court has implied authority to do what may be necessary in the exercise of the duties conferred upon them. City National Bank v. Presidio County (Tex.Civ.App.) 26 S.W. 775; 11 Tex.Jur. p. 566, par. 38.

■ The evidence clearly shows, we think, that prior to the construction of the Fabens Dyke and Drain, the county roads in the vicinity of the town of Fabens, the roadways, and the town of Fabens itself, were flooded by flood waters coming down in excessive quantities from San Felipe Arroyo, and it is fair to conclude that the construction of the Fabens Dyke and Drain was for the purpose of channelizing the flood waters coming down the San Felipe Arroyo, as a flood protection; it could have no other purpose, and the jury so found.

Prior to the construction of the drainage in question plaintiff's lands had not been overflowed.

We think, under the facts shown, the construction of the drain ditch was a lawful and commendable act on the part of the commissioners' court, and that the county may be made liable for damages caused by the overflow of plaintiff's land proximately caused by the construction of the drain ditch.

The court submitted to the jury, and the jury found, that plaintiff's "high land" was damaged as a proximate result of the construction of the Fabens Ditch, and assessed that damage at $25 per acre, 65 acres, $1,625, and found the plaintiff's 26 acres "river bed land" had been damaged $62.50 per acre, and assessed the damage at $1,625.

Defendant county submits that neither plaintiff's pleading nor the evidence justifies the submission of the issues for damage to the land.

Plaintiff's pleading and the evidence, we think, sufficiently alleges and shows damages to the 26 acres of land; it alleges that the 26 acres was flooded and overflowed by the surface water by reason of the construction of the ditch; that the overflow left a clay deposit on the land several inches in depth; it alleges the difference in the values of the land before and after the overflow. Without quoting, the evidence sufficiently shows damage to the 26 acres to justify the submission of the issue. As to the 69 acres (70 acres in the petition), the petition alleges its overflow by reason of the ditch; alleges the values before and after the overflow; alleges that, "as it is generally known that the construction of said Fabens Dyke and Road constitutes a

permanent danger of overflow to said land, and constitutes a permanent danger of flooding said land by diverting the natural flow of surface water from the old San Felipe Ditch, and the Fabens Dyke Road, as herein above alleged, is a permanent nuisance, and by reason of the construction of said Fabens Dyke Road, said 70 acres of land has been damaged to the extent," the amount stated.

Several witnesses testified: The land was overflowed and left deposit on the land, and that the sale value of the land was depreciated by reason of the danger of other overflows over the land.

■ The rule for damage to real property seems to be that where the damage is permanent, so that the depreciation in value constitutes the measure of damages, recovery may be had for prospective as well as present injuries. Heilbron v. St. Louis S. W. R. Co., 52 Tex.Civ.App. 575, 113 S.W. 610, 979, on motion for rehearing (writ of error refused). The ditch was constructed in 1930; plaintiff's land was flooded in 1935; claim for damages was filed with the commissioners' court in March, 1936; and his suit was filed in May, 1936.

■ Plaintiff's cause of action did not accrue until his claim had been rejected by the commissioners' court. His suit was not barred by the statute of limitation. Jones County v. Moore (Tex.Civ.App.) 4 S.W. (2d) 289; Angelina County v. Bond (Tex. Civ.App.) 16 S.W.(2d) 338; Southwestern Portland Cement Co. v. Kezer (Tex.Civ. App.) 174 S.W. 661; Wichita Valley Ry. Co. v. Marshall (Tex.Civ.App.) 37 S.W. (2d) 756.

■ The court, in question No. 3, in substance, submitted to the jury to find whether a person of ordinary prudence, "in the position of plaintiff," would not, at the time of the construction of said drain, have foreseen, by the use of ordinary care, that the construction of same would result in the flooding of plaintiff's land. The jury answered: "No."

The court submitted to the jury question No. 14, to find whether under all the facts and circumstances, "a person of ordinary prudence, by the exercise of reasonable diligence, could not have foreseen and anticipated the damage, if any, suffered by plaintiff," etc. The jury answered, "Yes."

Defendant very earnestly insists that the findings to the two questions are in irreconcilable conflict in a material respect, and for that reason the court was in error in rendering the judgment. We think the findings are not in conflict. Number 3 is to be viewed from the position of plaintiff, a farmer attending his farm, the evidence not showing that he was informed as to the capacity of the drainage ditch or its flood waters, or that plaintiff was personally interested in any way in the construction of the drainage ditch. Plaintiff's land did not border or abut upon the ditch, and had not been overflowed by flood waters from San Felipe Arroyo. In fact, we do not know why question 3 was submitted. We do not see its materiality, since plaintiff was not responsible in any way for the construction or use made of the ditch, and could do nothing to avoid the overflow from the ditch had he so desired, by the exercise of any kind of care or diligence.

Question 14 has application to the ditch builder, actively acting by and through its engineer, charged with knowledge of all of the facts and circumstances, and whose duty it was to exercise prudence in the construction of the ditch of sufficient capacity to contain and carry off the ordinary flow of the surface flood waters from San Felipe Arroyo.

■ Plaintiff alleged that the construction of the Fabens Dyke, at the place and in the manner in which it was constructed, "is permanent in character," "and that the complete, permanent and continuing injury complained of resulted therefrom."

Defendant insists that plaintiff's cause of action for damage to his lands was for permanent depreciation in their values by reason of the alleged continuing permanent character of the ditch causing the overflow of his lands; that it was necessary to submit to the jury whether the value of plaintiff's lands had been permanently impaired.

The court did not submit any issue inquiring whether the market value of plaintiff's lands had been permanently impaired, and no such issue was requested. Some of the evidence tended to show a temporary rather than permanent and continuous damage to the land. County Surveyor Coldwell, who was there when the flood waters came down the drain and observed the movement of the water when it reached the drainage under the North Loop Road, said the drainage was filled with sand, and the water thereby backed up in the ditch and overflowed the North Loop Road and plaintiff's land. Evidence shows that since the

overflow the structure under the North Loop Road has been widened. The evidence of some of the witnesses seems to fix the damages to the land upon the fact that the overflow resulted, and upon its probable recurrence at future times.

It is apparent, therefore, that a finding by the jury that the market value of the property had been permanently impaired was necessary to recover the damages sought. Continental Oil Co. v. Berry (Tex. Civ.App.) 52 S.W.(2d) 953, 955, on motion for rehearing (writ refused).

 Plaintiff alleges that he had growing on his said land fruit trees and growing crops itemized and of the reasonable market values as follows:

Alfalfa, 7 acres.................. $ 70.00
Cotton, 28½ acres............... 636.00
Corn, 1½ acres.................. 35.00
Fruit trees and grape vines...... 160.00
_____
Total value .................... $901.00,

which were damaged as above by the alleged overflow of his lands.

The court submitted to the jury to find the damage "to his (plaintiff's) growing crops," thus submitting the loss of the "fruit trees and grape vines" as growing crop.

The jury found the damages in the aggregate to "the growing crops" to be $901.

The uncontroverted evidence shows that the damage to the fruit trees and grape vines was $160. The item of damage to the fruit trees and grape vines must be included in the damage to the land upon which they were growing, to avoid a double recovery. City of Texarkana v. Rhyne, 126 Tex. 77, 86 S.W.(2d) 215; St. Louis S. W. Ry. Co. v. Follis (Tex.Civ.App.) 268 S.W. 1030; Texarkana & Ft. S. Ry. Co. v. Spencer, 28 Tex.Civ.App. 251, 67 S.W. 196.

 We have concluded that it was reversible error to fail to submit to the jury to find whether plaintiff's damages sustained were the proximate result of the permanent and continuing character of the ditch, or its maintenance, as constituting a permanent injury or damage to the reasonable market value of the land.

 We think the court, under the defendant's pleading and the evidence, should have submitted to the jury to find whether the construction or maintenance of the State Highway No. 1 proximately caused or contributed to cause the flood waters complained of to back upon and cause the damage to a part of plaintiff's land, and especially the growing crops thereon. Smith v. Tarrant County (Tex.Civ.App.) 44 S.W.(2d) 499; Wilbarger County v. Hall (Tex.Com.App.) 55 S.W.(2d) 797.

We have not discussed severally all of the questions presented; we have considered them, and think from what we have said, they may not recur on another trial.

The case is reversed and the cause remanded for another trial.