**UNIVERSAL CITY, Texas, Appellant,**

v.

**The CITY OF SELMA, Texas, Appellee.**

**No. 5348.**

Court of Civil Appeals of Texas, Waco.

Aug. 29, 1974.

Rehearing Denied Sept. 26, 1974.

Sawtelle, Goode, Davidson & Troilo, San Antonio, Tom Joseph, City Atty., Universal City, for appellant.

Foster, Lewis, Langley, Gardner & Banack, Emerson Banack, Jr., San Antonio, for appellee.

HALL, Justice.

The City of Universal City lies generally south of the City of Selma. On September 8, 1973, Selma began proceedings for annexing territory adjoining its southern boundary. On October 11, 1973, Universal City brought suit against Selma in the 73rd Judicial District Court, pleading that, for sundry reasons, the impending annexation should be declared invalid, and permanently enjoined. Trial to the court without a jury resulted in a take-nothing judgment against Universal City on October 23, 1973. Selma then proceeded with the annexation and completed it on October 27, 1973.

Soon thereafter, Universal City began proceedings toward annexation of an area which included a part of the territory just annexed by Selma. On November 13, 1973, Selma filed suit in the 166th Judicial District Court to permanently enjoin this proposed annexation by Universal City, asserting that it included territory within Selma's city limit and within the extraterritorial jurisdiction accorded Selma by Article 970a, Vernon's Ann.Tex.Civ.St.[1] Universal City answered with a general denial; and, pleading further, again asserted that Selma's annexation of the territory was invalid for several specified reasons, and sought a declaration of the rights of the parties. After a non-jury trial, the court permanently enjoined Universal City's pending annexation.

The State of Texas was not a party to either suit.

The cases were consolidated by the parties for the purposes of this appeal. On oral argument before this court it was stipulated that all evidence adduced on both trials should be considered by us as having been adduced on the trial of each case. We have done so.

The material facts are without dispute. The following map, although not exact, does show the relative locations of the cities and the territory in dispute, and should be of aid in understanding our recitation of the facts:

1. References to statutes throughout this opinion are to Vernon's Tex.Civ.St.

ANNEXED BY
UNIVERSAL CITY
IN 1973, BUT PRIOR
TO OCTOBER 1, 1973.

(Not in dispute)

ANNEXED BY UNIVERSAL CITY

IN 1972.

(Not in dispute)

HAM
TRACT

SELMA

UNIVERSAL CITY

LEGEND

| | |
|---|---|
| XXXXXXXXX | Selma's southern boundary at the time of filing of the original and amended applications for its incorporation on July 20, 1964, and July 25, 1964;\and at the time of original and amended orders of incorporation on September 10, 1964, and December 12, 1964. |
| — — — | one-half mile from Selma's southern boundary at the time of filing of the applications for incorporation. |
| ooooooooo | Universal City's northern boundary at the time of filing of the applications for Selma's incorporation. |
| - - - - - | one-half mile from Universal City's northern boundary at the time of filing of applications for Selma's incorporation. |
| HAM TRACT | Annexed by Universal City on September 8, 1964. |
| ......... | Northern boundary of Universal City on October 1, 1973, and at this time. |
| shaded | Territory annexed by Selma on October 27, 1973. |
| ///////// | The territory which Universal City proposes to annex. |

Chronologically, the facts are:

March 14, 1960. Universal City was incorporated as a general law city.[2]

July 20, 1964. The required number of inhabitants filed an application with the county judge of Bexar County for Selma's incorporation, in accordance with the provisions of Articles 1133 and 1134.[3] The boundaries set forth in the petition for the proposed city placed the southern limit of Selma approximately one mile from the northern limit of Universal City. However, in another direction, the proposed boundary overlapped and included a part of the extraterritorial jurisdiction of two other cities, in violation of Sec. 8.A., of Article 970a.[4]

July 25, 1964. An amended application for incorporation of Selma was filed. This application corrected the defect of the original application by eliminating from the boundaries of the proposed city that part which overlapped the extraterritorial jurisdiction of other cities. The southern boundary of Selma was not changed.

August 10, 1964. An election was ordered by the county judge, in accordance with Article 1136,[5] to be held on August 29, 1964, to decide the question of Selma's

incorporation. The order was specifically based upon the original, defective application of July 20th.

August 29, 1964. The incorporation election based upon the defective application was held.

September 1, 1964. By letter, R. L. Ham petitioned Universal City to annex 65 acres (hereinafter called the "Ham Tract") owned by him which adjoined Universal City's northern boundary.

September 8, 1964. Universal City annexed the Ham Tract, thereby purportedly extending its extraterritorial jurisdiction over a part of the territory in question.

September 10, 1964. Complying with the provisions of Article 1139,[6] the county judge entered his order upon the minutes of the commissioners court certifying that the returns of the election held on August 29, 1964 had been canvassed, and declaring Selma incorporated. This declaration was based upon and included the erroneous boundaries contained in the original application for incorporation.

November 19, 1964. Selma enacted an ordinance entitled "An Ordinance Establishing The Boundaries Of The Town Of

2. Ch. 11, Tit. 28, Arts. 1133—1153a, Vernon's Ann.Civ.St.

3. Art. 1133 provides for the incorporation of a town or village which contains more than 200 and less than 10,000 inhabitants, in the manner prescribed in the succeeding articles of Ch. 11, Tit. 28. Art. 1134 provides: "If the inhabitants of such town or village desire to be so incorporated, at least twenty residents thereof, who would be qualified voters under the provisions of this chapter, shall file an application for that purpose in the office of the county judge of the county in which the town or village is situated, stating the boundaries of the proposed town or village, the name by which it is to be known when incorporated, and accompany the same with a plat of the proposed town or village including therein no territory except that which is intended to be used for strictly town purposes . . . . ."

4. Art. 970a, Sec. 8.A. "No city may be inporated within the area of the extraterritorial

jurisdiction of any city without the written consent of the governing body of such city . . . ."

5. Art. 1136. "If satisfactory proof is made that the town or village contains the requisite number of inhabitants, the county judge shall make an order for holding an election on a day therein stated . . . for the purpose of submitting the question to a vote of the people . . . . ."

6. Art. 1139. "If a majority of the votes are cast in favor of incorporation the officers holding the election shall make return thereof to the county judge within ten days after the same was held. The county judge shall, within twenty days after the receipt thereof make an entry upon the records of the commissioners court that the inhabitants of the town or village are incorporated within the boundaries thereof; which boundaries shall also be designated in the entry . . . . ."

Selma, Texas, And Authorizing The Mayor To Make Application For An Amended Order Of The County Judge To Reflect The Corrected Metes And Bounds." This ordinance recites that the Selma boundaries set forth in the county judge's incorporation order dated September 10, 1964, "include a small area which lies within the extraterritorial jurisdiction of other municipalities, in contravention of the intention of the incorporators of said town as manifested in their Amended Application for Incorporation filed with said County Judge"; that a new survey has established the true boundaries to be in accordance with a metes and bounds description and a plat which are set forth in and attached to the ordinance; and that the mayor is authorized to make application to the county judge for an amended order of incorporation reflecting "the corrected boundaries of the Town of Selma, Texas."

December 2, 1964. An amended order declaring Selma incorporated was entered upon the minutes of the commissioners court by the county judge. This order acknowledged the boundaries description errors in the original application for incorporation and in the order made on September 10, 1964; and corrected them by designating new boundaries in keeping with those set forth in the amended application for incorporation filed on July 25, 1964, and in the Selma ordinance dated November 19, 1964.

September 8, 1973. Selma began annexation of the territory in question. As shown on the map, this territory adjoins Selma's southern boundary and Universal City's present northern boundary.

October 11, 1973. Universal City filed suit to enjoin the annexation by Selma.

October 23, 1973. Judgment was rendered that Universal City "take nothing." This is case number one before us.

October 27, 1973. Selma completed its annexation.

November 12, 1973. Universal City began annexation of a part of the territory in question.

November 13, 1973. Selma filed suit to enjoin the annexation by Universal City.

January 23, 1974. Judgment was rendered permanently enjoining the annexation by Universal City. This is case number two before us.

By enactment of Article 970a, the Legislature established extraterritorial jurisdictions for the cities of Texas. This Article became effective on August 22, 1963. Under its provisions, these jurisdictions vary in size, dependent upon the population of the cities, from "all the contiguous unincorporated area, not a part of any other city, within one half ($\frac{1}{2}$) mile of the corporate limits" of a city of less than 5,000 inhabitants, to such an area within five miles of a city of 100,000 or more inhabitants. Sec. 3.A. With the exception of adjacent property owned by it, a city may annex only territory within the confines of its extraterritorial jurisdiction. Sec. 7.A. When a city annexes additional territory, its extraterritorial jurisdiction expands in conformity with the annexation "and shall comprise an area around the new corporate limits." However, the extension of the extraterritorial jurisdiction of a city, whether by annexation, or because of an increase in the city's population, or otherwise, may not conflict with the existing extraterritorial jurisdiction of another city. And, excepting cases of judicial apportionment, the extraterritorial jurisdiction of a city "shall not be reduced without the written consent of the governing body of such city." Sec. 3.C. Additionally, without first meeting certain procedural requirements set forth in the statute, no city may be incorporated wholly or partly within the area of the extraterritorial jurisdiction of an existing city. Sec. 8.A.

Each of our parties claims an extraterritorial jurisdiction of one-half mile.

Selma's attempt to incorporate was faulty because of the defects in the boundary description which infected the election and the order upon which the incorporation was based. See Ewing v. State, 81 Tex. 172, 16 S.W. 872 (1891); Furrh v. State (1894, no writ hist.) 6 Tex.Civ.App. 221, 24 S.W. 1126; State v. Merchant (1905, no writ hist.) 38 Tex.Civ.App. 226, 85 S.W. 483. However, as shown by the facts, the attempt was made under color of valid statutory authority; and Selma has acted and been dealt with as a municipal corporation since that time. It was, therefore, a de facto corporation from September 10, 1964, the day the county judge declared it incorporated, until its incorporation was validated on May 23, 1973, the effective date of Article 974d–18, [7] a general validation statute.

Quo warranto proceedings are the exclusive remedy by which the legality of the existence and organization of a de facto municipal corporation, created and existing under color of a valid statute, may be questioned. Walling v. North Central Texas Mun. Water Auth., 162 Tex. 527, 348 S.W.2d 532, 533 (1961). It follows that the validity of Selma's incorporation could not be questioned in these collateral proceedings. Universal City's contrary contentions are overruled.

While a de facto municipality, Selma was entitled to the same legal rights, and assumed the same legal responsibilities as a de jure city. 18 Am.Jur.2d 594, Corporations, § 50. This included the extraterritorial benefits set forth in Article 970a.

Universal City says there is no evidence that Selma falls within the required population bracket for validation by Article 974d–18, supra. The only proof on the question is the testimony of Selma's City Administrator. He stated that Selma's population is "approximately 1,000, possibly a little bit less." This is some evidence that Selma meets the statute's requirement of having "1,000 inhabitants or less."

[4–6] It is the settled rule in this State that where a municipal corporation seeks to annex adjacent territory, and the residents of the territory seek to incorporate as a separate municipality, the first to commence legal proceedings asserting authority over the territory thereby acquires jurisdiction over it which cannot be defeated by the other's subsequent attempted jurisdictional activity. Beyer v. Templeton, 147 Tex. 94, 212 S.W.2d 134, 138 (1948); State v. City of San Antonio (Tex.Civ. App.—San Antonio, 1941, writ ref.) 147 S.W.2d 551, 552. Under this rule, the filing of the application for Selma's incorporation, in July, 1964, invoked municipal jurisdiction over the proposed city limit set forth therein in favor of Selma to the exclusion of Universal City or any other city. City of El Paso v. State (Tex.Civ.App.— El Paso, 1947, writ ref.) 209 S.W.2d 989, 994. Selma says that a logical extension of the rule would be a holding that the extraterritorial jurisdiction of a proposed city attaches when incorporation proceedings are commenced; and upon this premise it argues that its extraterritorial jurisdiction became fixed when the original and amended applications for incorporation were filed in July, 1964, or when the order for the incorporation election was made in

---

7. Art. 974d–18. "All cities and towns in Texas of 1,000 inhabitants or less, heretofore incorporated, or attempted to be incorporated under the terms and provisions of the general laws . . . and which are now functioning or attempting to function as incorporated cities or towns, are hereby in all things validated as of the date of such incorporation, or attempted incorporation; and the incorporation of those cities and towns shall not be held invalid by reason of the fact that the election proceedings or other incorporation proceedings may not have been in accordance with law, or by reason of a failure to properly define the limits of the city or town . . . . The areas and boundary lines of all cities and towns affected by this Act, including . . . the boundary lines covered by the original incorporation proceedings . . . are in all things validated . . . ."

August, 1964. We disagree. The rule relied upon came into being long before the creation of extraterritorial benefits. The policy reasons for the rule are not relevant to extraterritorial rights and in no way dictate an extension of the jurisdiction acquired upon the filing of the incorporation application to the areas which might become extraterritorial jurisdiction if there is in fact incorporation. A city is defined in the Municipal Annexation Act as an incorporated municipality; and implied throughout the provisions of the Act is the vesting of extraterritorial jurisdiction when and only when, a proposed municipality reaches that status. An area proposed for incorporation needs protection from annexation by existing municipalities while incorporation proceedings are pending, lest the intentions and efforts of the incorporators be thwarted. But, during this time there is no body politic—no municipal corporation—with its attendant rights. Article 1140.[8]

We hold, therefore, that extraterritorial jurisdiction is an appendage of actual incorporation. The newly created city will not be diminished in any way by this rule. It cannot lose something it never had. It still has all powers historically inherent in incorporation. And, as available upon its incorporation, it will have extraterritorial jurisdiction.

It follows that Selma could not have obtained extraterritorial rights prior to September 10, 1964, the day the county judge entered the order of incorporation. There is nothing in Article 974d–18, supra, the statute validating Selma's incorporation, to support a different ruling.

Universal City argues that inasmuch as Selma's claim to extraterritorial jurisdiction can date only from September 10, 1964, Universal City obtained prior extraterritorial rights over part of the territory in question with the Ham Tract annexation on September 8, 1964.

The record fails to show that Universal City complied with the notice provisions of Sec. 6, Article 970a,[9] when it enacted the Ham Tract annexation ordinance. Indeed, the proof on the question supports an implied finding that these notice requirements were not met. Noncompliance with these provisions would render the ordinance void when enacted. Fuller Springs v. City of Lufkin, (Tex.Sup., 1974) 513 S.W.2d 17. Having failed to establish the validity of the Ham Tract annexation, Universal City cannot claim extraterritorial rights over any of the territory in question on the basis of it. The territory therefore became a part of Selma's extraterritorial jurisdiction on September 10, 1964. The subsequent validation of the Ham Tract annexation with the enactment of Article 974d–11,[10] a general validation statute, would not change this. This is so, though the Legislature might have intended by passing the statute to validate the Ham Tract annexation as of September 8,

---

8. Art. 1140. "When the entry [by the county judge upon the minutes of the commissioners court that the inhabitants of the town or village are incorporated] has been made, the town shall be invested with all the rights incident to such corporation under this chapter . . . ."

9. Sec. 6, Art. 970a. "Before any city may institute annexation proceedings, the governing body of such city shall provide an opportunity for all interested persons to be heard at a public hearing to be held not more than twenty (20) days nor less than ten (10) days prior to institution of such proceedings. Notice of such hearing shall be published in a newspaper having general circulation in the city and in the territory proposed to be annexed. The notice shall be published at least once in such newspaper not more than twenty (20) days nor less than ten (10) days prior to the hearing . . . ."

10. Art. 974d–11. This statute became effective on May 17, 1965. It provides, in part, that any extensions of the boundary lines of general law cities are "in all things validated" and that "all governmental proceedings performed by the governing bodies of all such cities . . . since their incorporation . . . are hereby in all respects validated as of the date of such proceedings . . . ."

1964. The statute does not show a legislative intent to divest or otherwise disturb extraterritorial rights existent at the time of its passage.

Our holding that Universal City failed to prove that the Ham Tract annexation ordinance was valid does not reach the question of whether the ordinance can be collaterally attacked because of the want of compliance with the notice provisions of Sec. 6 of Article 970a, supra. In prosecution of the first suit, and in defense of the second, Universal City assumed the burden of proving the validity of this annexation. Its validity was, therefore, squarely in issue in both cases. Fuller Springs v. City of Lufkin, supra.

There are maps in evidence which indicate that Selma's annexation takes in a narrow strip of territory which was a part of Universal City's extraterritorial jurisdiction when Selma was incorporated. We have shown this strip on our map, ante, as the shaded area under hash marks along the eastern one-third of Selma's southern boundary. There are other maps, and supporting testimony, which may be reasonably interpreted in support of a finding that the annexed territory was completely within Selma's extraterritorial jurisdiction. This finding is implied in both judgments.

Selma's annexation ordinance is a part of the evidence. It is regular on its face, and is presumed valid. 39 Tex.Jur.2d 598, Municipal Corporations, § 269. To overcome this presumption and have the ordinance declared void, Universal City sought to establish that (1) no election was held to obtain the approval of a majority of the qualified voters residing in the territory prior to the annexation, in violation of Article 974; [11] and (2) the area of the annexed territory constitutes more than 10%, or, alternatively, more than 30%, of Selma's total corporate area at the time of the annexation, in violation of Secs. 7.B. and 7.C., of Article 970a.[12]

▬▬ There is proof that the annexation was based upon the affidavit of all of the seven qualified voters who reside in the territory. Article 974 does not require a formal election to determine the will of the resident voters toward annexation. They may express their preference on the subject by any method that is satisfactory to themselves and to the city council. And, when it is shown by proper affidavit that a majority favor annexation, then the statute's provision for their "vote" has been satisfied. Graham v. City of Greenville, 67 Tex. 62, 2 S.W. 742, 744 (1886).

▬▬ Moreover, as held in the *Graham* case, this irregular method of securing a

11. Art. 974. "When a majority of the inhabitants qualified to vote for members of the State legislature of any territory adjoining the limits of any city incorporated under, or accepting the provisions of, this title, to the extent of one-half mile in width, shall vote in favor of becoming a part of said city, any three of them may make affidavit to the fact to be filed before the mayor, who shall certify the same to the city council of said city. The said city may, by ordinance, receive them as part of said city . . . "

12. Sec. 7.B., Art. 970a. "A city may annex in any one calendar year only territory equivalent in size to ten per cent (10%) of the total corporate area of such city as of the first day of that calendar year. In computing the total amount of territory which may be annexed in any one (1) calendar year, there shall be excluded from such ten per cent (10%) the following: (1) territory caused

to be annexed by a request of a majority of the qualified resident voters in the territory and the owners of fifty per cent (50%) or more of the land in the territory, (2) territory annexed which is owned by the city, the county, the State, or the Federal Government which is used for a public purpose, (3) territory annexed at the request of a majority of the voters residing in such territory, and (4) territory annexed at the request of the owner or owners thereof."

Sec. 7.C., Art. 970a. "In the event a city fails in any calendar year or years to annex the total amount of territory which it is authorized to annex in such calendar year or years, such unused allocation may be carried over and used in subsequent calendar years. A city, utilizing the power granted under this Subsection, may not annex in any one calendar year an amount of territory in excess of thirty per cent (30%) of its total area as of the first day of the calendar year."

vote would not render the annexation ordinance subject to a collateral attack. In deciding the propriety of collateral attacks upon municipal acts, a distinction is made between those acts unauthorized by law or color of law, and those consisting of a mere irregular exercise of valid authority. A collateral attack upon an annexation ordinance is permissible by private parties who suffer some burden peculiar to themselves, if the annexation be wholly void because not authorized by law or color of law. Otherwise, such an attack must be made by the State in an action of quo warranto. Hoffman v. Elliott, (Tex.Sup., 1972) 476 S.W.2d 845, 846.

The record shows without dispute that the size of the area annexed by Selma is in excess of 30% of the area contained in its corporate limits. It would, therefore, be in violation of Sec. 7.C. of Article 970a if it did not fall within one of the exceptions set forth in Sec. 7.B. of the statute to the area limitations rule. Universal City did not prove that it did not fall within one of the exceptions. Some of Universal City's proof in this regard was erroneously excluded by the trial court, but, with due consideration given to this excluded testimony, Universal City still failed to prove that Selma's annexation ordinance did not meet one of the exceptions. Its challenge to the ordinance on this ground therefore failed.

Moreover, the territory annexed by Selma was, as we have held, wholly within its extraterritorial jurisdiction. If the annexation ordinance was enacted in violation of the statutes cited by Universal City, and if it should be considered wholly void for those reasons, Universal City has suffered no harm by the annexation and can receive no benefit if it is set aside. Without special damage, Universal City cannot mount a collateral attack on the ordinance. Hoffman v. Elliott, supra.

Finally, Universal City argues that the injunction issued in the second suit constituted judicial interference with the legislative process and was accordingly erroneous. We agree. For like reason, the injunction sought by Universal City in the first suit was properly denied.

The enactment of an annexation ordinance by a municipality is the exercise of duly conferred legislative authority. In recognition of the separation of powers doctrine, the courts of this state will not enjoin the enactment of an annexation ordinance, although it clearly appears that the ordinance will be void, unless it is also clear that the mere enactment of the ordinance will work irreparable injury without the intervention of some wrongful act under its purported authority. City of Dallas v. Couchman, (Tex.Civ.App.—Dallas, 1923, writ ref.) 249 S.W. 234, 239; City of Monahans v. State, (Tex.Civ.App.—El Paso, 1961, writ ref., n. r. e.) 348 S.W.2d 176, 179; City Of Arlington v. City Of Grand Prairie, (Tex.Civ.App.—Fort Worth, 1970, writ ref., n. r. e.) 451 S.W.2d 284, 293. Equity will, however, restrain the doing of any act under a void ordinance that is injurious to the complainant. Garitty v. Halbert, (Tex.Civ.App.—Dallas, 1920, no writ hist.) 225 S.W. 196, 198. The proper practice, therefore, is to wait until the ordinance is passed and the city attempts to operate under it before seeking relief against it, at which time the question of injury and the most effective remedy are more easily determinable.

The order denying the injunction sought by Universal City in the first suit is affirmed. The order granting the injunction sought by Selma in the second suit is reversed, and judgment is rendered that Selma take nothing. Insofar as both judgments deny Universal City's plea for declaratory relief they are reversed, and judgment is rendered as follows:

1. On September 10, 1964, Selma was incorporated as a de facto municipal corporation;

2. Selma acquired extraterritorial jurisdiction under the provisions of Article

970a, on September 10, 1964, unaffected by the Ham Tract annexation by Universal City;

3. Selma's incorporation was validated by the enactment of Article 974d–18;

4. The Ham Tract annexation was validated by the enactment of Article 974d–11;

5. The validation of the Ham Tract annexation by the enactment of Article 974d–11 did not deprive Selma of its existing extraterritorial jurisdiction; and,

6. Selma's annexation of the territory in question is valid.

Costs are taxed against Universal City.