CITY OF SAN ANTONIO, Appellant,

v.

CITY OF BOERNE, Appellee.

No. 04–00–00555–CV.

Court of Appeals of Texas, San Antonio.

Aug. 22, 2001.

Rehearing Overruled Sept. 14, 2001.

Donald S. Bayne, Asst. City Atty., Michael P. Hodge, Litigation City Atty., Harvey L. Hardy, San Antonio, for Appellant.

Randall B. Richards, The Law Offices of Randall B. Richards, Boerne, M. Stephen Cichowski, Watkins, Cichowski & Gonzalez, P.C., San Antonio, for Appellee.

Sitting: TOM RICKHOFF, CATHERINE STONE and SARAH B. DUNCAN, Justices.

## ON APPELLEE'S MOTION FOR REHEARING

CATHERINE STONE, Justice.

Appellee, City of Boerne, has filed a motion for rehearing. We grant the motion for rehearing, withdraw our opinion and judgment of May 30,2001, and substitute the following. Our opinion and judgment remain unchanged except for the final disposition, which no longer includes a remand.

In this case involving competing claims of two cities, we are asked to construe the Texas Municipal Annexation Act. This is an appeal of a declaratory judgment and injunction rendered against the City of San Antonio in a suit brought by the City of Boerne to determine the respective boundaries of extraterritorial jurisdiction, that area of land which serves as a "buffer zone" against expansion from other cities. We affirm the trial court's decision and hold that extraterritorial jurisdiction acquired in annexation proceedings does not attach until the annexation is complete. We further hold that county commissioners, authorized by the Legislature to build and maintain county roads, have the power to request that county roads be included within the extraterritorial jurisdiction of a municipality.

### The Controversy

On November 5, 1987, an ordinance was passed "on first reading" [1] by San Antonio to annex a strip of land in northern Bexar County. The city planned for tax pur-poses to have the annexation effective on December 31,1987. Under usual circumstances, the five-mile zone extending past the new boundary would have converted into the extraterritorial jurisdiction of San Antonio.[2] After San Antonio initiated the annexation process, however, the landowners near the neighboring City of Boerne reacted by requesting inclusion in Boerne's extraterritorial jurisdiction. The Boerne city council accepted the landowners' petitions and passed ordinances accepting the properties into Boerne's extraterritorial jurisdiction. As part of the requirement that the parcels of land be adjoining, certain county roads linking some of the properties were also accepted into Boerne's extraterritorial jurisdiction. The petitions to include those roads were submitted by the county commissioners of Comal and Kendall Counties. Boerne perfected its competing claim of extraterritorial jurisdiction, effective December 28, 1987, and portions of the areas claimed by the two cities overlapped. Overlap is prohibited by statute; nor may a municipality extend its extraterritorial jurisdiction into the extraterritorial jurisdiction of any other municipality unless the other municipality consents. TEX. LOC. GOV'T CODE ANN. § 42.022(c) (Vernon 1999).

In 1998, more than ten years after the annexation, this suit for declaratory judgment and injunction was brought by the City of Boerne against the City of San Antonio to establish whether certain contested areas of land lie within the extrater-

---

1. The passage of an ordinance on "first reading" is one method of instituting annexation proceedings in Texas. *See* Robert R. Ashcroft and Barbara Kyle Balfour, *Home Rule Cities and Municipal Annexation in Texas: Recent Trends and Future Prospects*, 15 ST. MARY's L.J. 519, 524 (1984) (hereinafter "Ashcroft & Balfour, *Municipal Annexation in Texas*"). *See also Knapp v. City of El Paso*, 586 S.W.2d 216, 218 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.)(detailing steps in passage on first reading).

2. Extraterritorial jurisdiction of a municipality is the unincorporated area which is contiguous to the corporate boundaries of the municipality. TEX. LOC. GOV'T CODE ANN. § 42.021 (Vernon 1999). The extent of the area depends upon the size of the municipality. *Id.*

ritorial jurisdiction of Boerne or San Antonio. On stipulated facts, the trial court granted summary judgment to Boerne, awarding declaratory and injunctive relief, as well as attorney's fees. The parties do not dispute that the annexation by San Antonio was valid and they concur that resolution of the legal issues will determine which of three potential boundaries should comprise the respective extraterritorial jurisdictions of the parties. We first address the issue of whether San Antonio gained exclusive rights over the proposed area of extraterritorial jurisdiction at the commencement of annexation proceedings.

### Annexation Jurisdiction

Municipalities, once unrestricted in their annexation powers, had their authority circumscribed by passage of the Municipal Annexation Act of 1963.[3] The Act defined extraterritorial jurisdiction as adjoining, unincorporated land and dictated that future annexations be from within the existing limits of a municipality's extraterritorial jurisdiction, except if the city already owned the land. *See* TEX. LOC. GOV'T CODE ANN. § 43.051 (Vernon 1999). The amount of land that could be annexed was relegated by the size of the municipal population. *Id.* at § 42.021. In Texas, annexation of land by passage "on first reading" has been the common practice. *See* Ashcroft & Balfour, *Municipal Annexation in Texas* at 524. Under this method, a city which first passes an ordinance annexing certain land has the right to annex the land at some point in the future, and to exclude all other municipalities from interfering with that right. Prior to the creation of the Municipal Annexation Act, cities could carve out what was essentially

extraterritorial jurisdiction. In effect, they were able to control development over unlimited areas with no obligation to develop the areas. *Id.* This practice, until abolished by the Municipal Annexation Act of 1963, created impenetrable barriers against expansion into the affected areas by other political subdivisions. *Id.*

■■■ The passage of annexation ordinances on first reading effectively institutes the act of annexation. *City of Houston v. Savely,* 708 S.W.2d 879, 888–89 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Despite the revisions within the Municipal Annexation Act of 1963, passage on first reading remains effective to secure jurisdictional priority for annexation purposes. *See City of La Porte v. State ex rel. Rose,* 376 S.W.2d 894, 907 (Tex.Civ. App.—Austin 1964), *rev'd in part on other grounds,* 386 S.W.2d 782 (Tex.1965)(noting that the first municipality to take steps toward annexation acquires annexation jurisdiction). As stated by the court in *City of LaPorte,* "annexation priority between cities depends upon the first exercise of annexation jurisdiction by first reading." *City of La Porte,* 376 S.W.2d at 907.

■■■ Annexation priority is significant because it bars expansion by other municipalities into the proposed area to be annexed. *City of Arlington v. City of Grand Prairie,* 451 S.W.2d 284, 291 (Tex.Civ. App.—Fort Worth 1970, writ ref'd n.r.e), *citing Beyer v. Templeton,* 147 Tex. 94, 101, 212 S.W.2d 134, 138 (1948); *Red Bird Village v. State ex rel. City of Duncanville,* 385 S.W.2d 548, 550 (Tex.Civ.App.—Dallas 1964, writ ref'd)(noting that the first city

---

**3.** Act of March 25, 1963, 58th Leg., R.S., ch. 160, 1963 Tex. Gen. Laws 447 (codified Act of 1987, 70th Leg., R.S., ch. 149 § 1, 1987 Tex. Gen. Laws 707, 741) (current version at TEX. LOC GOV'T CODE § 42.022 (Vernon 1999)).

The Act was not substantially changed in either the 1987 codification or 1999 recodification; therefore, cites in this opinion are to the current version.

to take any action towards incorporation obtains priority). San Antonio seeks to expand the priority concept by contending that the extraterritorial jurisdiction which accompanies annexation should attach when the annexation process begins, rather than upon completion of annexation.

A similar fact situation was presented in *Universal City v. City of Selma*, 514 S.W.2d 64 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.). In that case, the City of Selma filed an application for incorporation, thereby invoking jurisdiction over the proposed land to be incorporated. Following the "first in time" rule, the court held that municipal jurisdiction over the land to be incorporated attached at the filing of the incorporation application. *Universal City*, 514 S.W.2d at 70. It also noted that under the well-established rule, "the [first municipality] to commence legal proceedings asserting authority over the territory thereby acquires jurisdiction over it which cannot be defeated by [another municipality's] attempted jurisdictional activity." *Id.*

Similar to San Antonio's argument in the instant case, the City of Selma argued that the first in time rule should apply as well to extraterritorial jurisdiction and that it attached when incorporation proceedings were begun. *Id.* The court refused to accept this logic, and observed that the first in time rule was in existence well before the inception of extraterritorial jurisdiction. *Id.* The court noted that it was implied throughout the Municipal Annexation Act that extraterritorial jurisdiction vests in a proposed municipality only at the time of incorporation. *Id.* In the case at bar, San Antonio similarly asks this court to find that exclusive extraterritorial jurisdiction attached when legal proceedings were commenced, although the legal proceedings were annexation, rather than incorporation.

■ We cannot find any source to indicate that the first in time rule has been broadened to encompass extraterritorial jurisdiction. The rule awards exclusive jurisdiction specifically "over the area sought to be incorporated or annexed." *Village of Creedmoor v. Frost Nat'l Bank*, 808 S.W.2d 617, 618 (Tex.App.—Austin 1991, writ denied). Furthermore, as the court in *Creedmoor* cautioned, the statutory framework for extraterritorial jurisdiction would factor into the determination of jurisdiction, "rather than priority in time alone." *Id.* Thus the court's decision confirmed the statutory constraints pertaining to extraterritorial jurisdiction.

■ The facts in *Universal City v. City of Selma* are a compelling parallel to those in the present case, and there do not appear to be other cases dealing with this particular issue. Thus, rules of statutory construction are useful in deciding whether the same result should apply in this case. A fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature "as expressed in the language of that statute." *State v. Terrell*, 588 S.W.2d 784, 786 (Tex.1979). If a "statute is clear and unambiguous extrinsic aids and rules of statutory construction are inappropriate; and the statute should be given its common everyday meaning." *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). The expansion of extraterritorial jurisdiction is described in the following statute:

> When a municipality annexes an area, the extraterritorial jurisdiction of the municipality expands with the annexation to comprise, consistent with § 42.021, the area around the new municipal boundaries.

Tex. Loc. Gov't Code Ann. § 42.022(a) (Vernon 1999).

■ We look first at the operative phrase within the statute: "extraterritorial jurisdiction ... expands with the annexation." Since extraterritorial jurisdiction under this part of the statute is dependant upon the act of annexation, it is logical that the inquiry start with annexation. The statute does *not* say that extraterritorial jurisdiction attaches when annexation proceedings are initiated, but rather, that it expands "with the *annexation*." (emphasis added). Until annexation is achieved, no new extraterritorial jurisdiction is generated. Plainly stated, there can be no new extraterritorial jurisdiction until there are new city limits.

Municipalities have only ninety days in which to complete annexation, and passage upon first reading does not conclude the annexation process. TEX. LOC. GOV'T CODE ANN. § 43.053 (Vernon 1999). There must be some further action by the annexing entity to effectuate annexation. Passage on first reading will act as a bar to encroachment by others on the land to be annexed, but the statute does not indicate that extraterritorial expansion is fixed earlier than upon annexation. To hold that extraterritorial jurisdiction attaches prior to when the land is formally annexed, would be to read something more into the statute beyond what the language of the statute plainly states.

In the present case, the City of San Antonio passed the annexation ordinance on November 5, 1987, but chose for tax purposes to make the annexation effective a few days after the second reading, on December 31, 1987. The annexation was accomplished within the ninety days statutory limit, and there was no lapse in the jurisdiction which it obtained on "first reading." However, in the interval between San Antonio's passage on first reading and actual annexation, Boerne utilized an alternate procedure to lay claim to its own areas of extraterritorial jurisdiction, which is the next issue before this court: whether Boerne succeeded in establishing its claim of extraterritorial jurisdiction before San Antonio completed its opposing claim.

## The Petition Process of Annexation

In asserting its claim of extraterritorial jurisdiction, Boerne relies upon the following statute:

> The extraterritorial jurisdiction of a municipality may expand beyond the distance limitations imposed by § 42.021 to include an area contiguous to the otherwise existing extraterritorial jurisdiction of the municipality if the owners of the area request the expansion.

TEX. LOC. GOV'T CODE ANN. § 42.022(b) (Vernon 1999). Under this statute, the Boerne city council accepted petitions from landowners to be included within Boerne's extraterritorial jurisdiction. Four hundred forty-one petitions were accepted by ordinance until December 28, 1987. Some of these petitions were for portions of county roads, the owners of which are alleged by Boerne to be Kendall and Comal Counties. The roads were accepted for inclusion in Boerne's extraterritorial jurisdiction upon petitions from the commissioners of the counties in which the roads lay. The inclusion of the roads acted to "link" some of the properties together in order that properties be adjacent as required by statute. *Id.* at § 42.022(b). However, it was stipulated by the parties that not all of the extraterritorial jurisdiction claimed by Boerne is dependant upon the inclusion of county roads.

■ Both Boerne and San Antonio acknowledge that the State is the legal owner of the roads. *See Robbins v. Limestone County,* 114 Tex. 345, 355, 268 S.W. 915, 918 (1925). However, the commissioners courts have been given authority

by the Legislature to exercise general control over all roads in their counties.[4] In addition, the county commissioners courts are granted "all such other powers and jurisdiction and shall perform all such other duties, as are now or hereafter prescribed by law." *Crane v. State of Tex.*, 534 F.Supp. 1237, 1240 (N.D.Tex.1982), *rev'd in part on other grounds*, 759 F.2d 412 (5th Cir.1985). Given the unique structure of county government in Texas, elected county officials hold "virtually absolute sway over the particular task or area of responsibility entrusted to [them] by state statute" and they are "accountable to no one other than the voters" for their conduct. *Crane*, 534 F.Supp. at 1246. Indeed, under the Texas Constitution, commissioners courts are the counties' principal governing body. TEX. CONST. art. V, § 18; *see Commissioners Court of Grayson County v. Albin*, 992 S.W.2d 597, 603 (Tex.App.—Texarkana 1999, pet. denied).

■ The county is a local "arm of the state," a political subdivision which acts as an agent of the state. *Heigel v. Wichita County*, 84 Tex. 392, 394, 19 S.W. 562, 563 (1892). The state frequently uses a county as its agent in the discharge of the state's functions and duties. *Childress County v. State*, 127 Tex. 343, 351, 92 S.W.2d 1011, 1015 (1936). *See Crane v. State*, 534 F.Supp. at 1243 (noting that a county's primary responsibility is to carry out state functions).

■ Boerne asserts that the Legislature delegated this power to the county commissioners, giving them full power to do everything necessary to act as trustees of county roads for the public good. *See Hill Farm Inc. v. Hill County*, 425 S.W.2d 414, 418 (Tex.Civ.App.—Waco 1968), *aff'd,* 436 S.W.2d 320 (Tex.1969)(stating that in discharge of statutory duty to exercise general control over roads, commissioners courts are trustees of public county roads for the whole public). Boerne further argues that the grant of legislative power from the State gives county commissioners the right to exercise rights otherwise reserved to "owners" under the petition provision of the annexation statute. In considering this question, the expressed purpose of the annexation statute must be considered:

> The legislature declares it the policy of the state to designate certain areas as the extraterritorial jurisdiction of municipalities to promote and protect the general health, safety, and welfare of persons residing in and adjacent to the municipalities.

TEX. LOC. GOV'T CODE ANN. § 42.001 (Vernon 1999).

If the county commissioners are empowered with general control over roads to act as trustees for the public good and the annexation statute says the purpose of extraterritorial jurisdiction is to promote the general health, safety, and welfare of persons, then the two statutes are not incompatible. If, on the other hand, the county commissioners are without power to petition for annexation, then the petition process for annexation is subject to defeat by the fact that county roads happen to run by or through adjacent parcels of land. If it were necessary to obtain consent from the Legislature when the Legislature is not in session for months, then the statute is rendered "futile, meaningless or useless," as described in *City of Deer Park v. State, ex rel. Shell Oil Co.*, 259 S.W.2d 284,

---

4. TEX.REV.CIV. STAT. ANN. art. 2351(6) (Vernon's 1971), codified in TEX. LOC. GOV'T.CODE ANN. § 81.028 (Vernon 1993), and recodified in TEX. TRANS. CODE ANN. § 251.051 (Vernon 1999).

287 (Tex.Civ.App.—Waco 1953), aff'd, 154 Tex. 174, 275 S.W.2d 77 (1954). There, the court added:

> [I]t is elemental that a statute should be construed in such manner as to make it effective and operative, and where two constructions might be given a statute, one of which will effectuate the legislative intent and purpose and the other will defeat such intent and purpose, the former construction should be adopted in order to carry out the true intention of the Legislature in the enactment thereof.

*City of Deer Park*, 259 S.W.2d at 287.

■ The construction of section 42.022(b) depends upon whether it is held to mean that only the entity which holds legal title qualifies as an "owner" under the statute, or whether a political subdivision of the State may exercise that authority under a legislative grant. It has been generally held that the statutory and constitutional powers of counties are more narrowly interpreted than statutes pertaining to municipalities and "[u]nless a particular county action is explicitly authorized by the constitution or a statute, the county will not be allowed to exercise it." *Crane*, 534 F.Supp. at 1244; *accord Tri-City Fresh Water Supply Dist. No. 2 of Harris County v. Mann*, 135 Tex. 280, 286, 142 S.W.2d 945, 948 (1940). On the other hand, where a right or obligation is conferred on the commissioners court, the commissioners court has the implied authority to exercise broad discretion to achieve the intended purpose. *Anderson v. Wood*, 137 Tex. 201, 152 S.W.2d 1084, 1085 (Tex.1941); *see also Cosby v. County Comm'rs of Randall County*, 712 S.W.2d 246, 248 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *Schope v. State*, 647 S.W.2d 675, 678 (Tex.App.—Houston [14th Dist.] 1982, no pet.); *El Paso County v. Elam*, 106 S.W.2d 393, 395 (Tex.Civ.App.—El Paso 1937, no writ).

■ We must determine if either the limited power of the county commissioners to exercise general control over the roads or their authority to act as an agent for the State gives them authority to petition as "owners" of roads under section 42.002(b). The commissioners joined with the respective landowners to assemble the composite properties, and that participation by the commissioners to include the county roads furthered the aims of the landowners. In that respect, the commissioners were acting as trustees for the public good. The statute allows for the creation of extraterritorial jurisdiction to provide for the general welfare of the persons who reside in those areas. TEX. LOC. GOV'T CODE ANN. § 42.021 (Vernon 1999). The county commissioners court, with tasks that would be considered legislative, executive, administrative, and judicial, "include[s] the authority to make a substantial number of decisions that affect all citizens" and is the local unit of government with general responsibility and power for local affairs. *See Avery v. Midland County, Tex.*, 390 U.S. 474, 484, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). There does not appear to be any entity within the counties other than the commissioners courts which could have acted in such a situation as is here presented.

The question then is whether, if the State is the legal owner, the county commissioners may act within their legislative authority to promote the welfare of the citizens under the extraterritorial jurisdiction statute. If there is no other entity at the county level with jurisdiction and authority over these roads, then for all practical purposes, a vacuum is created in which the State, as legal owner, cannot exercise its power to petition for inclusion in the extraterritorial jurisdiction of a mu-

nicipality. This is particularly true when the Legislature is not is session.

We think that it is not the desire of the Legislature to enact statutes which cannot be given effect, and we hold that the county commissioners, as agents for the State, were empowered to petition for inclusion in the extraterritorial jurisdiction of Boerne. Since the claim of extraterritorial jurisdiction by Boerne was secured by December 28, 1987, the claim by Boerne was prior to the effective date of annexation by the City of San Antonio on December 31, 1987. Although San Antonio could have made the annexation effective at an earlier date, it chose not to, and it does not argue on appeal that the effective date of annexation is earlier than December 31, 1987.

We therefore affirm the judgment of the trial court.