**OLYMPIC WASTE SERVICES, A Division of Allied Waste Industries, Inc., Appellant,**

v.

**THE CITY OF GRAND SALINE, Texas, Appellee.**

No. 12–05–00217–CV.

Court of Appeals of Texas, Tyler.

Sept. 29, 2006.

Glenn D. Phillips, Phillips & Gilchrist, L.L.P., Kilgore, for appellant.

Blake E. Armstrong, Birdsong & Armstrong, Tyler, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Olympic Waste Services, a division of Allied Waste Industries, Inc., appeals from the trial court's orders granting the City of Grand Saline's plea to the jurisdiction and motion for summary judgment and the trial court's order denying Olympic's motion for partial summary judgment. In five issues, Olympic contends the City is not immune from suit for breach of contract and the trial court made erroneous rulings regarding its claim for violations of the Texas Open Meetings Act.[1] We affirm in part and reverse and render in part.

### BACKGROUND

Beginning in February 1989, Olympic contracted with the City to provide solid waste removal services. The contract had an initial five year term and renewed automatically for successive five year terms. However, either party could terminate with notice at least sixty days prior to the end of the five year term. On February 10, 2004, the Grand Saline city council awarded a "garbage contract" to Easley Sanitation, to be effective April 1, 2004. Olympic received a letter from the City dated February 17, 2004, stating that its contract with the City was "breached and terminated" on the grounds that Olympic had failed to provide certificates of insurance and surety bonds. The letter stated that Olympic would no longer receive payment from the City.

Olympic filed suit to have the contract between Easley and the City declared void due to violations of the Texas Open Meetings Act and the Local Government Code's competitive bidding requirements and to have the contract between Olympic and the City declared to be in full force. Alternatively, Olympic asserted a cause of action against the City for breach of contract. Olympic also alleged that Easley committed tortious interference with its contract with the City and conspired with unknown others to interfere with Olympic's contractual relations with the City.

Claiming immunity to suit, the City filed a plea to the jurisdiction arguing that the trial court did not have jurisdiction over Olympic's causes of action based on its contract with the City, that is, the request for declaratory judgment on the contract termination and the breach of contract claim. The City filed a motion for summary judgment on the cause of action for violation of competitive bidding, relying on an exception to the statute, and on the cause of action for violations of the Open Meetings Act based on statutory authority to consult with the city attorney in executive session. Olympic filed a partial motion for summary judgment addressing the alleged open meetings violations. The trial court denied Olympic's motion and granted the City's plea to the jurisdiction and its motion for summary judgment. Later, Olympic nonsuited Easley, dropping its tortious interference and conspiracy claims.

---

1. See TEX. GOV'T CODE ANN. §§ 551.001–.146 (Vernon 2004 & Supp.2006).

PLEA TO THE JURISDICTION

In its first issue, Olympic contends the trial court erred in granting the City's plea to the jurisdiction. Relying on the Local Government Code, which states that a municipality may sue and be sued, it argues that the City is subject to a legislative waiver of immunity for its contract claim.

### Standard of Review

 Immunity from suit bars an action against the State unless the State expressly consents to the suit. *Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Since as early as 1847, the law in Texas has been that absent the State's consent to suit, a trial court lacks subject matter jurisdiction. *Id.* The absence of subject matter jurisdiction may be raised by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Because subject matter jurisdiction presents a question of law, we review the trial court's decision to grant a plea to the jurisdiction de novo. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

 In reviewing a plea to the jurisdiction, we review the pleadings and any evidence relevant to the jurisdictional issue. *Texas Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001). The party suing the governmental entity must establish the State's consent, which may be alleged either by reference to a statute or to express legislative permission. *Jones,* 8 S.W.3d at 638. In considering the jurisdictional allegations contained in a petition, they are to be construed liberally in the plaintiff's favor. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993).

### Discussion

The Local Government Code provides that Type A general law municipalities

"may sue and be sued, implead and be impleaded, and answer and be answered in any matter in any court or other place." TEX. LOC. GOV'T CODE ANN. § 51.013 (Vernon 1999). In 1970, the Texas Supreme Court determined that the effect of the phrase "sue and be sued" in a statute is a waiver of sovereign immunity giving general consent for the entity to be sued in the courts of Texas in the same manner as other defendants. *Missouri Pac. R.R., Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970). However, the supreme court recently reconsidered this exact issue in *Tooke v. City of Mexia,* 197 S.W.3d 325 (Tex.2006). After reviewing legislative use of the phrases "sue and be sued," "implead and be impleaded," and "answer and be answered" since 1858, the court overruled *Missouri Pacific. Tooke,* 197 S.W.3d at 342. The court explained that, because immunity is waived only by clear and unambiguous language, and because the meaning of these phrases cannot be ascertained apart from the context in which they occur, they do not, in and of themselves, waive immunity from suit. *Id.* at 342.

 Further, and more to the point, the Legislature, in 2005, passed Sections 271.152 to 271.160 of the Local Government Code, which waive local governmental entities' immunity from suit for breach of contract under certain circumstances and limit damages. TEX. LOC. GOV'T CODE ANN. §§ 271.151–.160 (Vernon 2005). Although the effective date of the new statutes was September 1, 2005, the new law applies to claims arising under a contract executed before the effective date if sovereign immunity has not been waived with respect to the claim before the effective date. Act of May 23, 2005, 79th Leg., R.S., ch. 604, §§ 2–3, 2005 Tex. Gen. Laws 1548, 1549. Just as the supreme court determined in *Tooke* that the phrase

"plead and be impleaded" in the context of Local Government Code Section 51.075 reveals nothing about an intent to waive immunity, we determine that the phrase "sue and be sued" in Section 51.013 does not unambiguously waive immunity. *See City of Houston v. Boyer, Inc.*, 197 S.W.3d 393, 393 (Tex.2006) (Neither Local Government Code Section 51.075 nor city charter provision authorizing it to "sue and be sued, ... contract and be contracted with, implead and be impleaded in all courts and places and in all matters whatever" contains a clear and unambiguous waiver of immunity from suit.).

■ Olympic's claim for breach of contract arose under a contract executed before September 1, 2005, and the City was immune from suit on Olympic's claim. Therefore, Section 271.152 applies to waive immunity only to the extent provided by that statute. That is, the City's immunity to suit is waived for the purpose of adjudicating a claim for breach of contract. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. Damages are limited by Section 271.153 to include the balance due and owed by the local governmental entity under the contract, the amount owed for change orders in connection with the contract, and interest. TEX. LOC. GOV'T CODE ANN. § 271.153(a). The statute specifically provides that damages awarded under this subchapter may not include consequential damages. *Id.* § 271.153(b)(1). As did the plaintiffs in *Tooke*, Olympic attempted to recover lost profits, which under the facts of this case, are consequential damages excluded from recovery under the statute. *See id.; Tooke*, 197 S.W.3d at 346. Consequently, the City's immunity from suit on Olympic's breach of contract claim has not

been waived. *See Tooke*, 197 S.W.3d at 346.

Section 271.152 specifically applies to breach of contract claims. TEX. LOC. GOV'T CODE ANN. § 271.152. It does not mention claims for declaratory relief. Olympic also pleaded for declaratory judgment on the validity of its contract with the City in light of the City's attempted termination. The City claimed immunity to suit on this claim. As explained above, the "sue and be sued" language relied on by Olympic does not constitute a clear and unambiguous waiver of immunity by the City. *See Tooke*, 197 S.W.3d at 342. Therefore, the trial court lacked jurisdiction to give declaratory relief regarding the termination issue. Accordingly, the trial court did not err in granting the City's plea to the jurisdiction. We overrule Olympic's first issue.

### SUMMARY JUDGMENT

In its remaining issues, Olympic complains of the trial court's rulings on the City's motion for summary judgment and Olympic's motion for partial summary judgment regarding Olympic's claims of Open Meetings Act violations.[2] In its second issue, Olympic argues that the City's motion should not have been granted because fact issues exist with respect to violations of the Open Meetings Act. In its third issue, Olympic argues that its motion should not have been denied because the City violated the Open Meetings Act by taking action to terminate its contract in executive session and by evaluating, considering, and discussing the award of a contract to an independent contractor in executive session. In its fifth issue, Olympic asserts that the trial court erred in denying its motion because the City illegally used the statutory authorization for pri-

---

**2.** Although the trial court's ruling also granted the City's request for summary judgment on the claim for competitive bidding viola-

tions, Olympic has not appealed from that ruling.

vate consultation with the governmental entity's attorney found in Section 551.071 of the Act.

### Applicable Law

To obtain a summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.* at 549. Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law or conclusively establishes all elements of an affirmative defense as a matter of law. *See Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the nonmovant to produce controverting evidence raising a fact issue as to the elements negated. *Torres v. Western Cas. & Sur. Co.*, 457 S.W.2d 50, 52 (Tex.1970); *Owen Elec. Supply, Inc. v. Brite Day Constr. Inc.*, 821 S.W.2d 283, 286 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

A plaintiff, as movant, must conclusively prove all essential elements of his claim. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). Once a movant has established the right to a summary judgment on the issues presented, the nonmovant has the burden of introducing evidence that raises issues of fact. *Mott v. Montgomery County*, 882 S.W.2d 635, 640 (Tex.App.Beaumont 1994, writ denied).

The nonmovant's evidence must be of probative force. *Id.*

When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law, and neither party can prevail because of the other's failure to discharge his burden. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993); *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 549–50 (Tex. App.-Dallas 1990, writ denied). When reviewing competing motions for summary judgment, we consider all the evidence accompanying both motions. *Dallas County Appraisal Dist. v. Institute for Aerobics Research*, 766 S.W.2d 318, 319 (Tex.App.-Dallas 1989, writ denied) (op. on reh'g). We must indulge all reasonable inferences and resolve all doubts in favor of the losing party. *University of Tex. Health Sci. Ctr. at Houston v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex.1987). If the trial court grants one motion and denies the other, the appellate court should determine all questions presented and may render the judgment the trial court should have rendered. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988) (orig.proceeding).

When the order granting summary judgment does not specify the particular grounds the trial court sustained, on appeal, the summary judgment opponent must defeat each summary judgment ground argued by the movant. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Otherwise, an appellate court must uphold the summary judgment on any ground that is supported by the evidence and pleadings. *Id.*

The Texas Open Meetings Act requires every regular, special, or called meeting of a governmental body to be open to the public, with certain narrowly drawn exceptions. TEX. GOV'T CODE ANN. §§ 551.002,

551.071–.088. A governmental body may conduct a private consultation with its attorney when the governmental body seeks the advice of its attorney about pending or contemplated litigation or a settlement offer, or on a matter in which the duty of the attorney to the governmental body under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas clearly conflicts with Chapter 551 of the Government Code. TEX. GOV'T CODE ANN. § 551.071. This provision incorporates the attorney-client privilege, an attorney's duty to preserve the confidences of a client. Op. Tex. Att'y Gen. No. JC–0233 (2000). A governmental entity may consult with its attorney in executive session to receive advice on legal issues raised by a proposed contract. *Id.* However, the entity may not discuss the merits of a proposed contract, financial considerations, or other nonlegal matters related to the contract simply because its attorney is present. *Id.* Neither can the entity engage in a general discussion of policy unrelated to legal matters. Op. Tex. Att'y Gen. No. JM–100 (1983).

***Motions and Evidence***

■ In response to Olympic's allegation that the City violated the Open Meetings Act when it met in executive session during the February 10, 2004 meeting, the City asserted that the exception allowing consultation with legal counsel applied because the council met with the city attorney regarding its contract with Olympic. Relying on the affidavit of Grand Saline Mayor Terry Tolar, the City argued that the council, in executive session, discussed the ramifications of terminating the contract, the contractual options the City would have following termination, and the financial ramifications of continuing to do business with Olympic under the existing contract. Mayor Tolar stated in his affidavit:

The City Council did convene in executive session and consulted with City Attorney, Joel Elliott, regarding the existing contract with Plaintiff, the consequences of terminating the contract, legal ramifications of terminating the contract, and contractual options in the event the contract was terminated with Plaintiff. These were all legal matters that required the expertise and counsel from our City Attorney. As part of this discussion regarding the contractual issues previously mentioned, entering into a contract with Easley Sanitation was discussed as one of our options in the event the contract with Plaintiff was terminated.

Olympic filed a single document containing both a response to the City's motion and its own motion for partial summary judgment on the alleged violations of the Open Meetings Act. In response to the City's motion and in support of its motion, Olympic filed the contract at issue, a letter sent by the City dated February 17, 2004, the agenda and minutes for the February 10, 2004 council meeting, and excerpts from the depositions of Mayor Tolar and Gene Putman, Grand Saline's Public Works Director.

Olympic received a letter from Virginia Shafer, Grand Saline's City Administrator, dated February 17, 2004, informing Olympic that the City "hereby deems the contract, whereby you have been collecting the city's solid waste, breached and terminated." The letter went on to explain that the City had not received all required certificates of insurance or the surety bond and its accompanying certificate.

The agenda for the council meeting reflects that "garbage bids" were to be discussed at the workshop immediately prior to the public hearing. "Garbage bids" were also listed under item six, which listed topics to be discussed, accepted/reject-

ed, or tabled for further study. Under the title "EXECUTIVE SESSION" is the explanation that the City reserves the right to adjourn into closed session to discuss any of the matters listed in the agenda as authorized by Sections 551.071, 551.072, 551.073, 551.074, 551.076, or 551.087 of the Texas Government Code.

The topic of "garbage bids" is not listed among the items named in the minutes as having been discussed during the workshop on February 10. According to the minutes, early in the regular meeting, the council decided that "GARBAGE BIDS WILL BE DISCUSSED IN EXECUTIVE SESSION." The minutes further reflect that "AT 9:55 PM WENT INTO EXECUTIVE SESSION PER TX. GOV. CODE SEC. 551.071, FOR CONSULTATION WITH ATTORNEY ON GARBAGE BIDS." The next entry states: "COUNCIL RECONVENED INTO REGULAR SESSION AT 10:12 PM. LOGAN COSTILOE MADE A MOTION TO AWARD GARBAGE CONTRACT TO EASLEY SANITATION TO BE EFFECTIVE 4-1-04. SECOND BY JERRY BOLIN. ALL VOTED YES. MOTION CARRIED."

In his deposition testimony, Mayor Tolar said the council considered bids for garbage contracts at the February 10 meeting. He said that, at that time, there was an existing garbage contract between Olympic and the City and no one had threatened the City with litigation regarding garbage bids. Tolar testified that there were no severe service problems at that time and the City had not given Olympic notice of any severe service problem as of that date. He agreed with Olympic's counsel that the reason the "garbage issue" came up is because the city council was trying to save money. Predominantly, it was an economic issue, rather than a public safety or welfare issue. Tolar testi-

fied that before February 17, Olympic had a valid solid waste contract with the City and there were no major service problems with the contract. He explained that termination of the Olympic contract was done without the city council's authorization. He said it was not posted on an agenda or in any of the meetings. He agreed that proper termination of the contract required council action. He also agreed that it would be difficult for the administrator who signed the letter to know whether the insurance certificates had been provided to the City because she signed the letter, which was drafted by the city attorney, on her second day on the job. Tolar also stated that the City did not send notice by certified letter sixty days ahead of the contract termination.

Public Works Director Gene Putman testified that, on February 10, 2004, he had no reason to believe there would be a court case between Olympic and the City. He agreed that the reason the City wanted a new garbage contract was to save money. He also agreed that, on February 10, 2004, the City did not need a new garbage contract in order to preserve or protect the public health or safety of the citizens of Grand Saline.

### Legal Counsel Exception

Tolar explained that the city council, in executive session, consulted with the city attorney about the "consequences" and "legal ramifications" of terminating Olympic's contract. This discussion falls in the category of legal advice and is appropriate for executive session. *See* Op. Tex. Att'y Gen. No. JC-0233. However, the discussion of "resulting contractual options" including entering into a contract with Easley Sanitation is a topic not to be discussed in executive session. *See id.* The minutes seem to indicate that, immediately upon reconvening into regular session, the city council voted, without discussion, to award

a garbage contract to Easley Sanitation. Indulging reasonable inferences in favor of Olympic, this evidence supports a finding that the city council discussed the relative merits of awarding the contract to Olympic or Easley while in executive session in violation of the Open Meetings Act. *See id.; University of Tex. Health Sci. Ctr.*, 739 S.W.2d at 792. The evidence simultaneously shows that the City did not conclusively establish the affirmative defense provided by the statutory exception allowing the governmental entity to avoid an open meeting by consulting with its attorney and the City actually violated the Open Meetings Act. *See Black,* 797 S.W.2d at 27; *Jones,* 710 S.W.2d at 60. Therefore, the trial court erred in granting the City's motion for summary judgment and in denying Olympic's partial motion for summary judgment. We sustain Olympic's second issue. To the extent Olympic complains of the executive session discussion of the merits of the proposed Easley contract, and because that discussion is not allowed by the statutory exception for legal advice, we sustain Olympic's third and fifth issues. We need not reach Olympic's fourth issue. *See* TEX.R.APP. P. 47.1.

### Easley Contract

■ In its petition, Olympic asked the trial court to void the contract awarded to Easley on the basis of Open Meetings Act violations. In its brief, Olympic mentioned the existence of alleged fact questions precluding the City's summary judgment, stating that "[t]ermination of Appellant's contract in closed Executive Session would clearly violate the Act and void the Council action awarding the Easley contract." Other than this statement, Olympic provided no argument in support of its theory that it is entitled to have the contract voided.

Section 551.141 provides that an action taken by a governmental body in violation of the Open Meetings Act is voidable. TEX. GOV'T CODE ANN. § 551.141. Here, while the discussion that took place in executive session was in violation of the Act, voiding the Easley contract does not follow. The vote awarding the contract to Easley took place in open session, after the violation occurred. The vote was not taken in violation of the Act. Therefore, Olympic is not entitled to the remedy of voiding the Easley contract. *See United Indep. Sch. Dist. v. Gonzalez,* 911 S.W.2d 118, 128 (Tex.App.-San Antonio 1995, writ denied) (op. on reh'g).

### CONCLUSION

Due to application of the new statutory scheme for adjudication of claims arising under contracts with local governmental entities, we determine that the City's immunity from suit was not waived as to Olympic's breach of contract claim. Neither was the City's immunity waived as to Olympic's claim for a declaration regarding the continued validity of the contract. We *affirm* the trial court's order granting the City's plea to the jurisdiction. Because the evidence shows the City violated the Open Meetings Act, we *reverse* the trial court rulings on the City's motion for summary judgment and Olympic's motion for partial summary judgment and *render* judgment for Olympic on its Open Meetings Act claim.