COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-227-CV

 

 

CITY OF CRESSON, TEXAS                                                   APPELLANT

 

                                                   V.

 

CITY OF GRANBURY, TEXAS                                                   APPELLEE

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                OPINION
ON REHEARING

 

                                              ------------

After reviewing appellee City
of Granbury, Texas=s motion for
rehearing, we deny the motion.  However,
to clarify matters raised in Granbury=s motion, we withdraw our April 19, 2007 opinion and judgment and
substitute the following in its place.

Introduction








This case
involves a municipal annexation dispute in which the cities of Cresson and
Granbury both claim jurisdiction over property. 
Appellant, the City of Cresson, appeals from the district court=s (1) summary judgment in favor of appellee, the City of Granbury, and
(2) denial of summary judgment for Cresson. 
In three issues, Cresson contends that the provisions of the Municipal
Annexation Act control over the common law first-in-time rule and that its
extraterritorial jurisdiction (ETJ) expansion ordinances passed at the request
of property owners are not void as claimed by Granbury.  We reverse the judgment in favor of Granbury
and render judgment for Cresson.

Background Facts








 On May 3, 2005, Granbury adopted a resolution
(Resolution) directing its staff to prepare a service plan and to call two sets
of public hearings to accomplish a series of five, one-mile[1]
annexations stretching along State Highway 377 between Granbury and Cresson.[2]  The entire area described in the Resolution
began at the then-existing city limits of Granbury and extended along Highway
377 northeast towards, and terminating at, Cresson=s then-existing ETJ.[3]  The Resolution provided for the annexation to
be accomplished in immediate sequential order; in other words, after voting on
the annexation ordinance for the first one-mile tract, Granbury would then
immediately vote on the second, third, fourth, and fifth annexation ordinances
in order.

Cresson has an ETJ of
one-half mile, and Granbury has an ETJ of one mile.  At the time Granbury passed the Resolution,
only the first mile of the land described in the Resolution was then within
Granbury=s ETJ.  The remaining four
consecutive one-mile areas described in the Resolution (the Disputed Tracts)
were not included in any city=s ETJ.

After Granbury passed the
Resolution, several owners of land included within the Disputed Tracts
petitioned Cresson for their land to be included within Cresson=s ETJ.  Then, Granbury conducted
two hearings on its five proposed annexation ordinancesCas required by the Resolution and state lawCon May 17, 2005 and May 19, 2005.








On June 3, 2005, before the
Granbury city council could vote on the annexation ordinances proposed in the
Resolution, Cresson adopted and approved four ordinances accepting the
landowners= petitions
to include the Disputed Tracts within Cresson=s ETJ and expanding Cresson=s ETJ accordingly.  On June 21,
2005, during one counsel session Granbury adopted the five sequential
annexation ordinances proposed by the Resolution.  The first ordinance annexed the one-mile
tract already included within Granbury=s then-existing ETJ; the second through fifth ordinances annexed the
Disputed Tracts.  Cresson had already
passed an additional ordinance on June 14 and then passed another on June 28,
2005, expanding its ETJ to include additional property of the landowners who
had petitioned to be included within its ETJ. 
None of this property was included within the area purported to be
annexed by Granbury in accordance with the Resolution; however, Granbury
nonetheless challenges Cresson=s June 3, 2005 and June 28, 2005 ordinances as void because it claims
that the property described in those ordinances is now included within its ETJ
as extended by its annexation of the Disputed Tracts.[4]









Cresson filed suit seeking a
declaration that the final four annexations adopted by Granbury on June 21,
2005 are void because the Disputed Tracts were already in Cresson=s ETJ.  Granbury filed an
amended answer and counterclaim seeking to have all of Cresson=s ETJ expansion ordinances declared void.  The parties filed competing motions for
summary judgment.  The trial court
granted Granbury=s motion[5]
and signed a final judgment ordering that Cresson=s June 3, 14, and 28, 2005 ETJ expansion ordinances are void, and that
the five sequential annexation ordinances adopted by Granbury on June 21, 2005
are valid.

Standard of Review

When both parties move for
summary judgment and the trial court grants one motion and denies the other,
the reviewing court should review both parties= summary judgment evidence and determine all questions presented.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.








A plaintiff is entitled to
summary judgment on a cause of action if it conclusively proves all essential
elements of the claim.  See Tex. R. Civ. P. 166a(a), (c); MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).  A defendant who conclusively negates at least
one essential element of a cause of action is entitled to summary judgment on
that claim.  IHS Cedars Treatment Ctr.
of Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); see
Tex. R. Civ. P. 166a(b), (c).

When reviewing a
summary judgment, we take as true all evidence favorable to the nonmovant, and
we indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Mason, 143
S.W.3d at 798.  Questions of law are
appropriate matters for summary judgment. 
Rhone‑Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.
1999); Westchester Fire Ins. Co. v. Admiral Ins. Co., 152 S.W.3d 172,
178 (Tex. App.CFort Worth
2004, pet. filed) (op. on reh=g).

Issues on Appeal








Cresson contends that the
trial court erred by concluding that its June 3, 2005 ordinances expanding its
ETJ to include the Disputed Tracts, and its June 14 and 28, 2005 ordinances
including land contiguous to the Disputed Tracts within its ETJ, are void and
that Granbury=s June 21,
2005 ordinances annexing the Disputed Tracts are valid.  According to Cresson, Granbury=s ETJ did not expand to include the Disputed Tracts when Granbury
passed the Resolution; consequently, on June 3, 2005, Granbury had no claim to
the Disputed Tracts and Cresson had the right to include the Disputed Tracts
within its ETJ, making Granbury=s subsequent annexation of the properties invalid under the local
government code.  See Tex. Loc. Gov=t Code Ann. '' 42.023, 43.051 (Vernon 1999). 
Granbury contends that the common law first-in-time rule controls and
that by indicating in the Resolution its intention to sequentially annex the
five tracts at the same time, it acquired priority over Cresson as to the Disputed
Tracts upon passage of its Resolution.

Applicable Law 

Before
passage of the Municipal Annexation Act in 1963, cities= competing claims to property were governed by the common law Afirst-in-time@ rule.  City of Roanoke v. Town of Westlake,
111 S.W.3d 617, 630 (Tex. App.CFort Worth 2003, pet. denied). 
This rule provided that the first municipality to begin
annexation procedures on unclaimed territory obtained exclusive jurisdiction
over that property.  City of San
Antonio v. Boerne, 111 S.W.3d 22, 27 (Tex. 2003); City of Roanoke,
111 S.W.3d at 630; Village of Creedmoor v. Frost Nat=l Bank, 808 S.W.2d 617, 618 (Tex.
App.CAustin 1991, writ denied).  The
Texas Supreme Court has described the effect of annexation in accordance with
the first-in-time rule as follows:

This
virtually unbridled annexation authority enabled cities to claim territory
without incurring any obligation to provide new services or to formally annex
the designated property.  The result, as
noted by one commentator, was that Acities were quick to engage
in annexation wars and to stake [their] claim[s].@

   

Boerne, 111
S.W.3d at 27 (citations omitted).








The legislature enacted the
Municipal Annexation Act in 1963 to resolve conflicting claims between growing
and expanding cities.  Id.; City
of Roanoke, 111 S.W.3d at 630; Village of Creedmoor, 808 S.W.2d at
618.  With the Municipal Annexation Act,
the legislature created a statutory scheme, based upon the concept of ETJs, to
determine whether a municipality may exercise jurisdiction over a particular
area.  City of Roanoke, 111 S.W.3d
at 630; Village of Creedmoor, 808 S.W.2d at 618 (stating that whether a
municipality first exercises jurisdiction over an area is no longer always
determined by legal proceedings but by ETJ). 
In doing so, it declared that the policy of this state is to designate
certain areas as the ETJ of municipalities to promote and protect the general
health, safety, and welfare of persons residing in and adjacent to those
municipalities.  See Act of April
29, 1963, 58th Leg., R.S., ch. 160, article I, ' 3.A., 1963 Tex. Gen. Laws 447, 447 (current version at Tex. Loc. Gov=t Code Ann. ' 42.001 (Vernon 1999)).








A municipality may annex
property only if it is included within its ETJ or if the municipality owns the
property.  Tex. Loc. Gov=t Code Ann. ' 43.051; Boerne, 111 S.W.3d at 27.  A municipality may not annex land included
within another municipality=s ETJ without the other municipality=s consent.  Tex. Loc. Gov=t Code Ann. ' 42.023; City of Murphy v. City of Parker, 932 S.W.2d 479, 481
(Tex. 1996).  The size of the
unincorporated area that a municipality is allowed to claim as its ETJ is
determined by its population and defined by statute.  Tex.
Loc. Gov=t Code Ann. ' 42.021; see supra note 3. 
A municipality may expand its ETJ in three ways:  population growth, voluntary petition of a
contiguous land owner, or extension of the municipal boundaries through
annexation.  Tex. Loc. Gov=t Code Ann. ' 42.022(b)B(c).[6]  The expansion of one municipality=s ETJ by any of these three methods cannot include any area that
extends into the existing ETJ of another municipality.  Id. ' 42.022(c).

Under the current statutory
scheme, municipalities have ninety days to complete the annexation
process.  Id. ' 43.064 (Vernon Supp. 2007). 
The mere institution of annexation proceedings does not conclude the
annexation process.  City of San
Antonio v. Boerne, 61 S.W.3d 571, 576 (Tex. App.CSan Antonio 2001), rev=d on other grounds, 111 S.W.3d 22 (Tex.
2003); City of Arlington v. City of Grand Prairie, 451 S.W.2d 284, 288
(Tex. Civ. App.CFort Worth
1970, writ ref=d n.r.e.); see
Tex. Loc. Gov=t Code Ann. ' 43.064.  Thus, a municipality
does not acquire jurisdiction over property that is not otherwise within its
ETJ until final passage of an annexation ordinance.  City of Arlington, 451 S.W.2d at 288.








Likewise, because the plain
language of section 42.022(a) provides that ETJ Aexpands with the annexation,@ a municipality=s ETJ does
not correspondingly expand until final passage of an annexation
ordinance, rather than when annexation proceedings are first initiated.  Tex.
Loc. Gov=t Code Ann. ' 42.022(a) (emphasis added); City of Longview v. State ex rel.
Spring Hill Util. Dist., 657 S.W.2d 430, 431 & n.2 (Tex. 1983); Boerne,
61 S.W.3d at 576; cf. Universal City v. City of Selma, 514 S.W.2d
64, 70-71 (Tex. Civ. App.CWaco 1974,
writ ref=d n.r.e.) (holding that ETJ attaches only upon completion of
incorporation of city), disapproved of on other grounds by Alexander Oil Co.
v. City of Seguin, 825 S.W.2d 434 (Tex. 1991).[7]  In other words, there cannot be new ETJ until
there are new city limits.  Boerne,
61 S.W.3d at 576.

Analysis








Granbury
acknowledges that its ETJ did not expand to include the Disputed Tracts until
it actually passed the first of the five sequential annexation ordinances on
June 21, 2005; however, it contends that even though the Disputed Tracts were
not included in its ETJ until that time, Cresson was nevertheless prohibited
from expanding its ETJ into that area. 
According to Granbury, the current statutory scheme is silent as to
which city has priority over an area when one of the cities proposes to use the
sequential annexation procedure used by Granbury here; therefore, the
first-in-time rule should be applied as a gapfiller.  See Village of Creedmoor, 808 S.W.2d
at 618 (stating that A[t]he
principle of first-in-time priority is still important in municipal law,@ but applying controlling statuteClocal government code section 42.041Cto resolve appeal); cf. City of Arlington, 451 S.W.2d at
291-92 (applying first-in-time rule to determine which of two ordinances should
control when both were initially invalid but later made valid by legislative
validating acts).








However, the current statutes
adequately address Cresson=s and Granbury=s competing
claims, so there is no need to resort to the common law first-in-time rule as a
gapfiller.  Granbury was not entitled to
assert jurisdiction over the Disputed Tracts until final passage of the first
of its five sequential ordinances on June 21, 2005; under sections 42.022(c)
and 43.051 of the local government code, it did not acquire any ETJ in the Disputed
Tracts until its first annexation was complete. 
Tex. Loc. Gov=t Code Ann. '' 42.022(c), 43.051; City of Longview, 657 S.W.2d at 431 &
n.2; Boerne, 61 S.W.3d at 576; cf. Universal City, 514
S.W.2d at 70-71.  Thus, when Cresson
enacted its June 3, 2005 ordinances including the Disputed Tracts within its
ETJCwhich it was authorized to do under section 42.022(b)Cno other city, including Granbury, had any jurisdictional rights to
the Disputed Tracts.  It follows that
when Granbury finally adopted the first of its five annexation ordinances on
June 21, 2005, its ETJ could not expand into the Disputed Tracts under section
42.022(c) because the Disputed Tracts were already included within Cresson=s ETJ under section 42.022(b).[8]  Accordingly, Granbury=s final four June 21, 2005 ordinances purporting to annex the Disputed
Tracts are void.  See City of Waco v.
City of McGregor, 523 S.W.2d 649, 652, 654 (Tex. 1975); City of Houston
v. Savely, 708 S.W.2d 879,  887 (Tex.
App.CHouston [1st Dist.] 1986, writ ref=d n.r.e.), cert. denied, 482 U.S. 928 (1987).








We hold that Granbury=s final four June 21, 2005 annexation ordinances are void and that
Cresson=s June 3, June 14, and June 28, 2005 ETJ expansion ordinances are
valid.[9]  Accordingly, the trial court erred by
granting summary judgment for Granbury. 
We sustain Cresson=s three
issues.

Because Cresson asks that we
render judgment granting its competing motion for judgment and because Granbury
raised several additional issues in response to Cresson=s summary judgment motion, we must also address those issues in
determining whether the trial court properly denied Cresson=s motion.[10]








In its response to Cresson=s motion for summary judgment, Granbury raised three matters that it
contended create a fact issue precluding summary judgment: (1) that after
Cresson=s June 3 ordinance was adopted, a member of the city council
instructed a citizen who asked questions about the ETJ expansions that he would
talk to her about the matter after the meeting and that A[i]f a quorum of Cresson=s city council were present during this conversation, it would have
been an illegal meeting under the Texas Open Meetings Act@; (2) that a hushed conversation occurred during the June 3 meeting
between Aa member of the governing body and another@ concerning the ETJ expansions, at the very least raising a fact issue
concerning a potential violation of the Open Meetings Act; and (3) that there
is a fact issue concerning whether the agenda for the June 3 meeting was posted
at least seventy-two hours beforehand because although the notice states that
it was posted on May 31, 2005, it does not state the time it was posted.  [Emphasis added.]








The evidence pointed to by
Granbury is insufficient to raise a fact issue as to whether Cresson provided
the required seventy-two hours= notice.  To be timely, the
notice had to have been posted no later than 7:00 p.m. on May 31, 2005, see
Tex. Gov=t Code Ann. ' 551.043 (Vernon 2004); the meeting agenda notes only that it was
posted on May 31, 2005.  Granbury did not
bring forward any evidence indicating that a member of the public had tried to
timely view the agenda but could not find it or that the agenda was not timely
posted.  In fact, viewing the evidence in
the light most favorable to Granbury, as we must, the only reasonable inference
from this evidence is that the agenda was posted timely.  Cf. City of Fort Worth v. Groves, 746
S.W.2d 907, 914-15, 920 (Tex. App.CFort Worth 1988, no writ) (holding evidence sufficient to prove that
notice was not properly posted in place readily accessible to general public at
all timesCanother
requirement of the notice statuteCwhen appellee testified he attempted to access posting places but
courthouse doors were locked and deputy sheriff would not let him in, and
evidence also showed that when courthouse was locked, public could not access
without deputy sheriff, who was sometimes absent from his post making rounds).








The other Open Meetings Act
violation allegations also fail to raise a fact issue.  As to the alleged conversation between a
council member and a member of the public regarding the ETJ expansions, there
is no evidence that the conversation actually occurred, only that in response
to a question from a citizen, a council member asked the citizen if he could
explain what was going on after the meeting was over.[11]  Nor is there evidence that if such a
conversation did occur as proposed by the council member, that any other
members of the council were present, only Granbury=s speculation that A[i]f a quorum . . . were present,@ the meeting would have been illegal. 
See Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 164
(Tex. 2004); Martin v. Cadle Co., 133 S.W.3d 897, 904 (Tex. App.CDallas 2004, pet. denied).








Moreover, this alleged
conversation would have taken place after the meeting and, thus, after the
council had already voted in open session on the ETJ expansions.  Any post-vote deliberation could not have
invalidated the prior, valid votes taken during open session.  See Olympic Waste Servs. v. City of Grand
Saline, 204 S.W.3d 496, 504 (Tex. App.CTyler 2006, no pet.); United ISD v. Gonzalez, 911 S.W.2d 118,
128 (Tex. App.CSan Antonio
1995) (op. on reh=g), writ
denied, 940 S.W.2d 593 (Tex. 1996). 
This also applies to any conversations that might have occurred between
or among council members during the public discussion portion of the meeting
that occurred after the votes.[12]  See Olympic Waste Servs., 204 S.W.3d
at 504; United ISD, 911 S.W.2d at 128.

Accordingly, we also hold
that the trial court erred by denying summary judgment for Cresson.  We sustain all three of Cresson=s issues.

Expedited Mandate








While this motion for
rehearing has been pending, Cresson filed a Motion for Expedited Issuance of
Mandate and Motion for Sanctions.  In the
motion, Cresson alleges that Granbury has continued to assert its jurisdiction
within the Disputed Tracts despite our prior opinion and judgment holding that
the Disputed Tracts are included within Cresson=s ETJ and, thus, that Granbury=s ordinances attempting to annex the Disputed Tracts are void.  Accordingly, Cresson asks this court to
sanction Granbury and to issue mandate Aimmediately@ to prohibit
further action by Granbury with respect to the Disputed Tracts.  See Tex.
R. App. P. 18.1(c) (providing that court of appeals may issue mandate
earlier than provided for in appellate rules Afor good cause@ on a party=s motion).  In a response,
Granbury contends that Cresson has not shown good cause to issue the mandate
early; Granbury also asserts that it Afully intends to appeal to the Texas Supreme Court if it is not successful
before this [c]ourt.@

We decline to impose
sanctions at this time.[13]  Although we believe that Cresson has shown
good cause for the parties= rights in the Disputed Tracts to be settled as quickly as possible,
we are also mindful of Granbury=s representation to this court that it intends to file a petition for
review in the supreme court. 
Accordingly, we grant Cresson=s motion as follows:  if
Granbury does not file a petition for review in the supreme court within the
time periods set forth in rule 53.7, as they may be extended by the supreme
court upon Granbury=s timely
filing of a motion to extend, then mandate will issue immediately upon the
expiration of the applicable rule 53.7 time periods, as they may be extended by
the supreme court, see Tex. R.
App. P. 18.1(a)(1), 53.7; if Granbury timely files a petition for review
in the supreme court and that petition is denied, dismissed, or refused, then
mandate shall issue immediately 








upon the expiration of time to file a motion for
rehearing of such denial, dismissal, or refusal, as that time may be extended
by the supreme court upon Granbury=s timely filing of a motion to extend, see Tex. R. App. P. 18.1(a)(2), 56.1(b)B(d), 64.1, 64.5.

Conclusion

Having sustained Cresson=s three issues on appeal, we
reverse the summary judgment in favor of Granbury and render summary judgment
in favor of Cresson.                    

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

 

DELIVERED:
January 10, 2008       

 

 

 











 
 
 
 
 




 











[1]The
areas proposed to be annexed were one mile in length and approximately 1,000
feet in width on either side of, and including, Highway 377.





[2]A map
showing the areas described in the Resolution is attached to this opinion.





[3]A
municipality=s ETJ
is the unincorporated area that is contiguous to the corporate boundaries of
the municipality and that is located within one mile of those boundaries in the
case of a municipality with 5,000 to 24,999 inhabitants and within one-half
mile in the case of a municipality with less than 5,000 inhabitants.  Tex.
Loc. Gov=t
Code Ann. '
42.021(1)-(2) (Vernon Supp. 2007).

 





[4]Granbury=s
challenge to the June 14, 2005 expansion ordinance is based on the alleged
invalidity of the June 3 ordinances.





[5]The
record contains a letter opinion from the trial judge indicating that it was
his opinion that Granbury=s Acommencement
of legal proceedings asserting legal authority over the territory in question
resulted in its acquiring jurisdiction over such territory which cannot be
defeated by [Cresson=s]
subsequent attempted jurisdictional activity.@  In other words, the trial court decided that
the first-in-time rule applied to, and resolved, the conflict here.





[6]A
city may expand its ETJ when contiguous landowners request inclusion of their
property within the city=s
ETJ.  Id. '
42.022(b).  





[7]But
see Fuller Springs v. State ex rel. City of Lufkin, 503
S.W.2d 351, 352-53 (Tex. Civ. App.CBeaumont 1973) (holding that
passage of annexation ordinance on first readingCrather
than final passageCoperated
to extend ETJ so as to assert authority over territory in question), rev=d on
other grounds, 513 S.W.2d 17 (Tex. 1974).





[8]Granbury
contends that because the supreme court has approved the immediately sequential
annexation process that it used here, the first-in-time rule should operate to Asave@ the
entire area proposed to be annexed according to that process.  See City of Longview, 657 S.W.2d at
431 n.2.  But in City of Longview,
there was no competing claim to the as-yet-created ETJ resulting from the
sequential annexations.  Id. at
431.  There is no question that Granbury=s
ordinances annexing the Disputed Tracts would be valid if Cresson had not been
able to properly include them within its ETJ by statute.





[9]Granbury=s
challenge to the June 14, 2005 ordinance is contingent upon its argument that
the June 3, 2005 ordinances are void; because we have determined that the June
3 ordinances are valid, its argument as to validity of the June 14 ordinances
also fails.  Granbury also contended in
its motion for summary judgment that the June 28, 2005 ordinance accepting Wise
Asset #2 Ltd.=s
property into Cresson=s ETJ
is invalid because part of Wise Asset=s property is located within
part of Granbury=s ETJ
as expanded by its one valid June 21, 2005 annexation.  But the landowner agreement with Wise Asset
upon which Cresson based its ordinance specifically states that it does not
include Aany
portion . . . in the city limits or [ETJ] of the City of Granbury, Texas, at
the time [the] Agreement is signed.@  Thus, the ordinance accepting Wise Asset=s
property into Cresson=s ETJ
could not have included any portion of that property located within Granbury=s ETJ
and is, therefore, not invalid.





[10]Neither
of the parties discusses these issues in their briefing, presumably because it
is clear from the record that the trial court granted Granbury=s
summary judgment upon application of the first-in-time rule.  However, because Cresson requests that this
court render summary judgment in its favorCand because Granbury never
expressly conceded these issues on appealCwe will address them in
determining whether to render judgment for Cresson.  See Comm=rs
Court of Titus County v. Agan, 940 S.W.2d 77, 80 (Tex.
1997).





[11]The
citizen=s
comments are inaudible on the audiotape, but the minutes of the meeting show
that a citizen questioned, A[W]hat was going on?@  The minutes then state that Councilperson
Cornett advised that Ahe
will explain after the meeting.@  Our review of the audiotape indicates that
the council person actually asked the citizen if he could explain after
the meeting; another council person who had presided over the meeting
(presumably the mayor) then advised the citizen that as a result of the votes
previously taken at the meeting, Cresson had added to its ETJ.  These two responses are clearly audible on
the audiotape and appear to have been made in open session.  An inaudible conversation then took place,
apparently between one or more council members; however, we cannot discern what
the discussion was about.





[12]There
is only one other conversation on the audiotape of the June 3 hearing that is
difficult to hear.  After one of the
votes, in which all votes were Aaye@ and
there were no Anay@
votes, it appears that the mayor says that AThe nays have it.@  An unidentifiable person asks him a question,
and the mayor clarifies, AThe
yeas have it.@  From what we can discern of this
conversation, there appears to have been no deliberation involved, only
clarification of the result of the vote that had just occurred in open session.





[13]Cresson
has also filed an Application for Writ of Injunction with this court, which is
docketed as a separate original proceeding. 
Cresson alleges the same facts in that proceeding but requests that this
court enjoin Granbury from its alleged activities in the Disputed Tracts.  We are considering that proceeding separately
from Cresson=s
motion to expedite mandate.